UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| CYNTHIA A. BRISCOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:06-CV-187-C |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Cynthia A. Briscoe seeks judicial review of a decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The United States District Judge referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court has reviewed the administrative record and the arguments of the parties under the standard set forth under 42 U.S.C. § 405(g) and has determined that the Commissioner's decision is supported by substantial evidence, was reached through the application of proper legal standards, and should be affirmed.

## I.    Statement of the Case

Briscoe previously worked as a laundry assistant, a school bus driver, a convenience store cashier, and a customer service representative for a flower delivery company. (Tr. 111,

665-66.)  In application documents, she claimed she became disabled in October 2003 and stopped working because she could not handle stress and could not stay focused and because of depression, anxiety, and fatigue.  (Tr. 110.)

The Administrative Law Judge (ALJ) held a hearing at which Briscoe, a vocational expert, and a medical expert testified.  (Tr. 661-81.)  Briscoe testified that she stopped working in October 2003 because she had a heart attack, which she claimed was caused by stress and anxiety, and because she was depressed.  (Tr. 672.)  She also testified that she had struggled with mental difficulties since she discovered in 1997 that her children had been molested and continued to work despite her problems but ultimately could not handle the stress she experienced.  (Tr. 672-73.)  The medical expert testified that Briscoe had been diagnosed with depression, anxiety, personality disorder, and passive/aggressive personality disorder; that Briscoe had a history of drug and alcohol abuse and the records showed that she continued to drink alcohol and smoke marijuana; and that there was a question of hallucinations but that he believed they were related to the use of drugs and alcohol. (Tr. 673-74.)  The medical expert testified that he believed Briscoe's main problem was her passive/aggressive personality disorder and he believed she could perform light work that would require only incidental contact with the public and that would not involve extensive contact with the public and with supervisors.  (Tr. 674.)  The vocational expert testified regarding jobs available in the national economy he believed Briscoe could perform. (Tr. 678-80.)

The ALJ determined that Briscoe was capable of performing light work but that she

had a limited mental Residual Functional Capacity (RFC).  He found that she was limited by a moderate concentration deficit and limited to jobs that would not involve working with the general public and would require only superficial contact with co-workers and supervisors. (Tr. 19.)  He also determined that she was limited to jobs that would not involve regular communication with others on the job, which the ALJ defined as "not regularly engaging in telephone calls and other types of communications."  *Id*.  Based on testimony from the vocational expert, he determined that Briscoe could perform jobs existing in substantial numbers in the national economy and was therefore not disabled.  (Tr. 19-21.)

Briscoe argues the ALJ erred in not according controlling weight to opinions provided by her treating physicians and that his mental RFC determination is not supported by substantial evidence.  She also argues the ALJ erred in accepting testimony provided by the vocational expert and the medical expert.

## II.    The ALJ's Assessment of Treating Physician Opinion and his Determination of Briscoe's Mental RFC

Briscoe contends the ALJ's mental RFC determination is contradicted by reports from her treating psychiatrists and mental health counselors.  She points out that one of her mental health counselors, Mary Byrd, M. Ed., NCC, LPC-intern[1], noted that Briscoe became "agitated in stressful situations and has a difficult time under pressure, as a job would dictate" and that she did not handle stress well and "would be constantly distraught in the

---

[1]

The acronym NCC refers to National Certified Counselor, and the acronym LPC refers to Licensed Professional Counselor.

work situation" and would be unable to "respond in a positive manner to stress and changes that a work place would dictate."  (Tr. 484.)  Briscoe also points out that her treating psychiatrist, Victor A. Gutierrez, M.D., assigned her a Global Assessment of Functioning (GAF) score[2] of 50 and complains that the ALJ discounted the score.  (Tr. 600; *see* Tr. 18.) Briscoe further argues that Dr. Gutierrez indicated in his examination notes the seriousness of her condition and points to notations in examination notes which indicate that she experienced memory loss; depression and anxiety; dissociative phenomena and "blackouts" when driving; problems remembering to do things; and that she was hearing voices and talked to inanimate objects.

The ALJ's decision indicates that he considered all the medical evidence, and his mental RFC determination, in which he included limitations regarding concentration and working with others, indicates that he gave weight to some of the opinions contained in the examination notes of Briscoe's mental health care providers.   The ALJ was not required to accord controlling weight to Byrd's opinion.   The ALJ noted that Ms. Byrd was not an "acceptable medical source" to establish whether Briscoe had a medically determinable impairment or could return to work.  (Tr. 18.)  Among those defined in the regulations as "acceptable medical sources" are licensed or certified psychologists. 20 C.F.R. § § 404.1513, 416.913 (2006).  The records from Byrd indicate that she was an intern at the time she gave

---

[2]

A GAF score is an assessment of an individual's psychological, social, and occupational functioning based on a hypothetical continuum of mental health and mental illness.  AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 2000) (DSM-IV).

her opinion. (Tr. 485.) In addition and in the alternative, whether a claimant is capable of working is a legal determination reserved to the Commissioner and therefore not entitled to special significance. *Frank v. Barnhart,* 326 F.3d 618, 620 (2003); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

The ALJ did not err in discounting the GAF score of 50. As an initial point, a GAF score is not conclusive evidence regarding a claimant's ability to work. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("a GAF score . . . is not essential to the RFC's accuracy"). In addition, there are conflicting GAF scores in the record; Dr. Gutierrez assigned Briscoe a GAF score of 50, a GAF score of 60, and a GAF score of 65. (Tr. 546, 561, 564.) A GAF score of 50 indicates serious symptoms or any serious impairment in social or occupational or school functioning. *Id.* A GAF score of 60 indicates moderate symptoms and moderate difficulty in social or occupational or school functioning, while a GAF score between 61 and 70 indicates "some mild symptoms" or some difficulty in social or occupational or school functioning. *Id.*

The notations Briscoe cites as indicative of her mental capacity consist primarily of her subjective complaints and do not require a finding that the ALJ's mental RFC determination was incorrect. For example, although it was noted that Briscoe experienced dissociative phenomena and "blackouts" when driving, she reported experiencing such symptoms only four times between 1989 and 2004. (Tr. 377.) In addition, although Dr. Gutierrez noted Briscoe's subjective complaints, he also indicated in the objective portion of his examination notes that Briscoe's conversation was coherent and goal-

directed; she was oriented as to time, place, and person; her retention, recall, and remote memory were good; she was not delusional; her insight and judgment were good; her fund of information was adequate and intelligence was average; and she took good care of her twelve year old daughter and could handle her own finances.  (Tr. 378, 551, 563, 600.)

It is the ALJ's task to weigh the evidence in a claimant's record and the court's task to determine whether the ALJ's decision is supported by substantial evidence.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) (citation omitted).  There is substantial evidence in this case to support the ALJ's decision.  Briscoe was non-compliant with treatment; there were inconsistencies in her testimony; she worked for a period of years despite her mental impairments; she cared for her daughter, cooked, did chores, and shopped for groceries; she was capable of driving long distances and spending considerable time on the computer; and she reported to a health care professional that she had never experienced serious problems getting along with co-workers.  (*See, e.g.,* Tr. 264, 276, 282, 378, 545, 597, 668-70, 673.)

## III.   The ALJ's Reliance on the Vocational Expert's Testimony and the Medical Expert's Testimony

The ALJ posed a hypothetical question to the vocational expert in which he incorporated Briscoe's mental RFC and certain demographic information and inquired whether there were any jobs in the national economy such an individual would be capable of performing.  (Tr. 678-79.)  In response, the vocational expert identified the jobs of small products assembler, assembly press operator, and folding machine feeder. (Tr. 679.) Briscoe

6

argues there are conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT)[3] in regard to the skill and mental functioning requirements of the three jobs the vocational expert identified and that the ALJ erred because he did not resolve the conflicts.  Briscoe first claims the jobs of small products assembler and assembly press operator require a reasoning development of two and that this requirement conflicts with the ALJ's RFC determination.  She next argues that the jobs identified by the vocational expert involve work with dangerous machinery which would require the ability to concentrate well.

Briscoe's arguments do not require remand.  According to the DOT, jobs classified as requiring a reasoning development level of two require the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations. *See* "Components of the Definition Trailer," Appendix C, http://www.oalj.dol.gov/PUBLIC /DOT/REFERENCES/DOTAPPC.HTM (last visited Apr. 10, 2007).    According to Dr. Gutierrez' examination notes, Brisoce's insight and judgment were good, her retention and recall were good, her remote memory was good, her fund of information was adequate, and her intelligence was average.  (Tr. 378, 600.)  Briscoe could therefore perform jobs requiring  a reasoning development level of two.

There is no evidence that would require a finding that Briscoe could not perform work involving dangerous machinery.  First, nothing in the DOT indicates that the machinery

---

[3]

The DOT, published by the United States Department of Labor, is a comprehensive listing of jobs existing in the United States. For each listed job, the DOT indicates the specific tasks and responsibilities of that job in addition to the strength, education, and vocational preparation requirements.  Dictionary of Occupational Titles, http://www.oalj.dol.gov/libdot.htm (last visited Feb. 10, 2007).

involved in the identified jobs pose a danger to workers.  In addition, although the ALJ's mental RFC determination limited Briscoe to jobs that would require no more than moderate concentration, the vocational expert testified that the identified jobs required more attention than concentration.  (Tr. 679.)  According to the medical records and Briscoe's testimony, she spent a substantial amount of time on the computer chatting with friends and playing games.  (Tr. 304, 668-69.)  Briscoe's time on the computer demonstrates that she is able to give attention to tasks before her.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir.1995) (citing *Fields v. Bowen,* 805 F.2d 1168, 1170 (5th Cir.1986)).  Thus, the ALJ may rely upon the expertise of a vocational expert in determining complex issues, such as whether a claimant's work skills can be used in other occupations and the specific occupations in which they may be used.  20 C.F.R. §§ 404.1566 (e), 416.966(e).  Briscoe has not identified any direct conflict between the vocational expert's testimony and the data in the DOT and has not identified any tasks in the identified jobs that she is incapable of performing or that otherwise conflict with the ALJ's mental RFC determination.  There is therefore no direct or indirect conflict between the vocational expert's testimony and the definition in the DOT, and the ALJ's reliance on the vocational expert's testimony was not error.  *See Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).

Briscoe argues the ALJ erred in accepting the medical expert's testimony and claims that the ALJ "apparently went over what [the medical expert] was supposed to testify to prior

8

to the hearing" and that his testimony was fraudulent and "a sham." Briscoe's argument must be rejected. Briscoe has not pointed to a specific portion of the medical expert's testimony she believes the ALJ should have rejected and there is no indication from the hearing transcript that the exchange between the ALJ and the medical expert was rehearsed. (*See* Tr. 674-76.) Further, the ALJ included limitations in his mental RFC beyond those recommended by the medical expert. The medical expert testified that Briscoe could perform light work that involved only incidental contact with others. (Tr. 674.) The ALJ went beyond this restriction and indicated in his RFC that Briscoe had a moderate concentration deficit. (Tr. 19.) He also included restrictions regarding the type of interpersonal contact Briscoe would be able to tolerate in a job that were broader and more specific than those the medical expert cited in his testimony. (*See* Tr. 19, 674.)

To the extent Briscoe is complaining that the ALJ acted with prejudice or bias, her claim is foreclosed because the record reflects that she did not present the claim to the Appeals Council. (Tr. 8.) A claimant who alleges the ALJ acted with prejudice must exhaust administrative remedies by raising the issue of bias before the Appeals Council. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing 20 C.F.R. § 416.1440) (court refused to review a claim of bias where claimant alleged bias was evident from statements made in ALJ's decision, but failed to raise issue with the Appeals Council).

## IV.   <u>Recommendation</u>

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court dismiss Briscoe's appeal with prejudice.

9

The Commissioner has shown with substantial evidence that Briscoe can perform other work existing in the national economy and is not disabled, and Briscoe has not shown that she cannot perform the identified work. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Therefore, the Commissioner's decision is conclusive and must be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

## V.      Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court.  A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: April 30, 2007.


NANCY M. KOENIG
United States Magistrate Judge

10